UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BRYAN BRIGHTWELL, )<br>)<br>Plaintiff, )<br>)<br>VS. )<br>)<br>)<br>BANDERA COUNTY. )<br>)<br>Defendant. )<br>) | Civil Action No. SA-16-CA-1216-XR |

**ORDER**

On this date, the Court considered Plaintiff's Objections and Motion to Exclude Defendant's Expert Witness (docket no. 20), and the response and reply thereto.

**Background**

Plaintiff's First Amended Complaint (docket no. 17) is the live pleading. It alleges that Plaintiff was employed by Bandera County as an emergency medical services first responder for nearly five years. Plaintiff alleges that he became ill at work on March 7, 2016, and informed his crew chief. He alleges that he was told by the EMS director Calvin Plummer not to return to work until he was cleared by a doctor. Plaintiff alleges that it was not immediately clear why he was sick, and he took time off from work in March to see "numerous doctors." He was eventually diagnosed with Meniere's Disease, a disorder of the inner ear causing episodes of vertigo, fluctuating hearing loss, ringing in the ear, and sometimes a feeling of fullness or pressure in the ear.

Plaintiff alleges that, with treatment, he is able to work as a paramedic at full capacity and that his doctor cleared him to return to work to perform light duty on March 30, 2016. Plaintiff alleges that, when he called Plummer to report his availability to return to work, Plummer immediately terminated his employment and sent a letter to that effect dated March 30, 2016. The letter states that Plummer was notified of concerns with Plaintiff's "patient assessment and inability to recognize the severity of the patient," that Dr. Wilson advised him that "he thought [Plaintiff]

lacked a sense of urgency and/or the possible significance of the patient's complaints (over the phone)," and that Plaintiff should be able to function independently and that Plummer could not "continue to disrupt the schedule to provide another Paramedic to permanently work with [Plaintiff]."

Plaintiff alleges that the reasons stated for his termination were false, and that Bandera County unlawfully interfered with his rights under the FMLA, retaliated against him for taking FMLA-protected leave, and discriminated against him because of a disability or perceived disability. Plaintiff asserts claims under the FMLA, the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act. Bandera County denies that it discriminated against or retaliated against Plaintiff.

On July 7, 2017, Bandera County filed its Rule 26(a)(2)(B) expert witness disclosures, wherein it designated Robert Abbott as a testifying expert. Docket no. 19. Abbott is the Fire Chief for the Lake Travis Fire Department, which Plaintiff states is a roughly equivalent position to that of Brightwell's supervisor at Bandera County. The Rule 26 disclosure states that Abbott would testify "regarding Plaintiff's job performance as a paramedic, whether or not he was performing to the level necessary for the position and in compliance with Defendant's procedures and protocols." *Id.* Plaintiff filed a Motion to Exclude Abbott, arguing that Abbott has not been shown to be qualified to provide the jury with true expert opinions, that his opinions are nothing more than regurgitation of the ultimate fact issue of Bandera County's stated reason for discharge, and that his opinions are made without any scientific, technical, or specialized knowledge, would not be helpful to the jury, and would be far more prejudicial than probative.

## Abbott's Report

Abbott's report consists of seven sections: (1) his review of Brightwell's clinical reporting; (2) his review of Brightwell's Performance Improvement Plans; (3) a discussion of patient disengagement and instances where Brightwell's co-workers have indicated that he exhibited patient disengagement; (4) Brightwell's job description; (5) a review of Brightwell's performance ratings during paramedic training; (6) a review of personnel counseling instances in Brightwell's personnel file; and (7) Abbott's professional opinions.

Abbott first reviewed Brightwell's clinical reporting, noting that Bandera County EMS

utilizes the Electronic Patient Care Reporting system (ePCR) to document incident information, patient demographics, patient care treatment, and specific patient data. He stated that he reviewed the "ePCR QA markers and comments"[1] for trips completed by Brightwell from February 5, 2015 to February 27, 2016, and stated that he "found a number of QA markers and comments from report reviewers that illustrated a lack of skill when documenting basic patient information." He stated that, "[w]hile it is not uncommon for an experienced paramedic to make documentation mistakes, the errors found between the dates of 2/5/2015 and 2/27/2016 reflect repeated errors and a lack of focus for providing safe patient care," and he listed three specific examples on 5/21/2015, 12/08/2015, and 1/31/2016. He opined that "[t]he QA markers and comments by report reviewers reflect a concerning deficiency in patient engagement and a disorganized treatment plan on the part of the paramedic." He noted that "[t]he report reviewers acknowledged calls when Mr. Brightwell completed patient care reports well but continued to offer feedback to help him improve his patient care and documentation skills," and he "found the feedback for improvement to be in-line with Bandera County EMS's policy and procedures."

Abbott then reviewed Brightwell's "performance improvement plan." Abbott states that Director Plummer emailed all employees on July 8, 2015, requiring them to attend staff meetings to discuss policies, guidelines, and documentation, and "he also included that education and PIPs would be used to help any employee that may experience difficulties maintaining their competencies." Abbott states that Brightwell was placed on two PIPs, one in 2015 and one in 2016, and that he reviewed both. He noted the performance deficiencies identified in the PIPs and the plans for improvement. He states the 2015 PIP identified the following performance deficiencies: inconsistent documentation (assessment, interventions, and narratives) and patient care. He states the 2016 PIP identified the following deficiencies: inability to accurately and completely document information from patient care to the ePCR and documentation skills continued to lack important information needed for patient assessment/care and billing purposes. He states that the plan for improvement including assigning Doug Carlyle to Brightwell's shift to assist and retrain him.

---

[1] Abbott states that system is used to document incident information, patient demographics, patient care treatment, and specific patient data and the "information collected in this system serves for legal documentation, Quality Assurance (QA), and Quality Improvement (QI) purposes."

Abbott states, "In my opinion, both PIPs were justified and identified critical areas where improvement was needed."

Abbott's report then discusses "patient disengagement," noting that it "occurs when a care provider withholds patient care treatment, under-assesses a patient, or finds ways to assign or deflect the responsibility of patient care to another care provider," and stating that it "is a serious issue that can lead to further injury or the death of a patient." He further states, "To help reduce patient disengagement, continual feedback should be given to the care provider along with access to training programs." He states, "In this case, Mr. Brightwell was provided continual feedback on his patient care plans and documentation skills through two PIPs and had access to continuing education programs through his employer." He then specifically cites three emails, two from David Hulsey in 2014 and 2015 asserting that Brightwell would hand off patients to his partner, and one from Carlyle on March 9, 2016 "expressing his concerns over three calls where he (Carlyle) had issues with the level at which Mr. Brightwell would engage in assisting with patient care and his inability to assess a severely injured or ill patient."

Abbott then lists Brightwell's job description essential functions, to include (1) performs the initial assessment and management of illness and/or injury to emergency patients in accordance with Bandera County EMS protocols, standard operating procedures, and Department of State Health Services guidelines; (2) provide direct patient care as required to each individual; and (3) completes and transfers patient care information following Health Insurance Portability and Accountability Act (HIPPA) guidelines, along with proper documentation.

Abbott then includes a "review of performance during paramedic training." He notes that, during his training, Brightwell received either a "3" or "4" on a 1 (poor) to 5 (excellent) scale "in categories that Mr. Brightwell later showed deficiencies in when practicing as a paramedic for Bandera County EMS; mainly advance life support skills and documentation."

Last, Abbott discusses two instances of "personnel counseling" in 2015. The first related to allegations of sexual misconduct with a patient in which the patient failed to provide a written statement and the investigation was closed with no action taken, and in the second he was issued a written warning for displaying angry behavior and using profanity towards a jailer and deputy for releasing a patient from custody.

Abbott then provides the following "professional opinions": (1) Brightwell was afforded reasonable opportunities to improve his delivery of patient care at the Advance Life Support (ALS) level and required documentation skills before being terminated on March 30, 2016; (2) Brightwell struggled with significant patient disengagement and documentation issues that date back to his initial paramedic training program and from the records did not appear to be improving in this regard; (3) Brightwell failed to perform as a paramedic as required in the job description; one that he accepted to work under as an EMS provider; (4) Brightwell's failure to improve in areas of patient care and to properly assess the severity of a patient's injury or illness preventing him from safely and effectively functioning as a paramedic for Bandera County EMS; and (5) "Based on the risk of injury or death to a patient, if I had been his supervisor and presented with his performance history, I would have terminated Mr. Brightwell."

## Applicable Standard

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony if it will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Additionally, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods" that the expert has "reliably applied" to the facts of the case at hand. *Id.*

The Court must first determine whether the proffered witness qualifies as an expert. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact, rather than for the court. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999).

If the expert is qualified, then the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. This role requires "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597; *Pipitone*

*v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("In short, expert testimony is admissible only if it is both relevant and reliable."). Although Federal Rule of Evidence 704 provides that otherwise admissible opinion is not objectionable just because it embraces an ultimate issue to be decided by the trier of fact, that does not mean that the door is open to all opinions, and the rule is not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239-40 (5thCir. 1983). An expert should not permitted to give opinions that simply reiterate what the lawyers can and do offer in argument. *Little v. Technical Specialty Prods., LLC*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013) (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)). The ultimate focus remains on whether the testimony would be helpful to the trier of fact and is reliable.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is reliable: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id*. at 593-94; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Additionally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

A few courts have considered proposed expert testimony similar to Abbott's, though this

testimony was mostly offered by plaintiffs rather than defendants. In *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99 (D. Conn. 2006), the court excluded the testimony of the plaintiff's proposed expert, a professor of human resources management. The court excluded his opinions that defendants could have accommodated the plaintiff's disability without significant impact, but instead retaliated against her by moving her to a less desirable position, that they did not take reasonable care to prevent discrimination and harassment of plaintiff, and that their rationale for downsizing plaintiff from her position was inadequate and their procedures for doing so did not follow appropriate practices of human resources management. The court found that the opinions included legal conclusions and therefore impermissibly invaded the jury's province. Although the expert was qualified to opine on accommodations that could have been made to accommodate conditions such as the plaintiff's insomnia and the types of measures that can be taken by employers to prevent discrimination and harassment, his opinions were not framed in those terms, but sought to substitute his judgment for the jury's. *Id.* at 103-04.

In *Whilhoite v. Bi-Lo, LLC*, No. 3:06-CV-32, 2007 WL 5117410 (E.D. Tenn. June 29, 2007), the plaintiff offered expert testimony purportedly "to provide background information regarding whether non-discriminatory reasons existed for the plaintiff's termination and whether acceptable human resources practices were followed." The proposed expert opined that the employer did not have a legitimate non-discriminatory reason for terminating plaintiff, that the plaintiff performed his job duties sufficiently and that termination could not be justified under the circumstances. The court excluded the witness on the basis that his opinions improperly invaded the province of the jury and simply told the jury what result to reach when the jury was capable and understanding the matters.

In *Pittman v. General Nutrition Corp.*, No. H-04-3174, 2007 WL 951638 (S.D. Tex. Mar. 28, 2007), the court excluded testimony from a human resources expert that the company was looking for an excuse to not promote the plaintiff, that the employer intended to discriminate, and that the proffered explanation for failing to promote the plaintiff was no more than a pretext. It found that these opinions were legal conclusions and/or invaded the province of the jury, which is capable of deciding an employer's motivations and the existence of pretext after considering the evidence at trial. The court did admit some opinions that were "grounded in personnel expertise and would assist the jury's determination," including that the decision to fill the position with another

candidate was a violation of the employer's own policy against rehiring applicants who were previously fired for cause, and that the plaintiff appeared to be a very qualified management employee and one capable of further promotion, and in fact appeared to be more qualified than some of the others who were hired or promoted.

In *Hernandez v. City of Vancouver*, No. CO4-5539FDB, 2009 WL 279038 (W.D. Wash. Feb. 5, 2009), the plaintiff sought to offer an expert on the subject of discrimination and retaliation. The court allowed expert testimony "as to proper governance standards" and "the City's deviation from good human resources practices" because it was relevant and "could assist the jury because the average juror is unlikely to be familiar with human resources management policies and practices." The court did not allow the expert to opine that the defendant's failure to comply with good human resources practices was indicative of discrimination, however. The court also disallowed the bulk of the testimony on the basis that it "consists of little more than a recitation of Plaintiff's evidence, combined with her conclusion that the evidence demonstrates that Plaintiff was discriminated against." The court noted that the jury can consider the same evidence and is qualified to make conclusions based upon that evidence.

In *Trentham v. Hidden Mountain Resorts, Inc.*, No. 3:08-CV-23, 2010 WL 11519874 (E.D. Tenn. Jan. 15, 2010), the court excluded a human resources expert on the basis that the testimony consisted "of little more than a recitation of the Plaintiff's allegations combined with [his] conclusion that the evidence demonstrates that the Plaintiff was discriminated against based upon her cancer diagnosis" and the jury could consider the same evidence and reach conclusions from that evidence.

*United States v. St. Bernard Parish*, No. 12-321, 2013 WL 1563242 (E.D. La. Apr. 12, 2013) involved expert testimony proffered by a defendant on the issue of whether the parish discriminated on the basis of race in zoning. The court noted that the ultimate finding of discrimination is to be made by the jury, and thus the expert's opinion on whether discrimination had or had not occurred was not admissible. The court did find that expert testimony "would be appropriate . . . to opine on whether the PUP ordinance and its implementing criteria were reasonable methods to achieve a legitimate purpose in rebuilding post-Katrina."

In *Ferretti v. Pfizer, Inc.*, No. 11-CV-04486, 2013 WL 140088 (N.D. Cal. Jan. 10, 2013), the

court allowed the testimony of an expert in "human resources management" on the issue of pretext, when he opined about whether the defendant's actions in placing the plaintiff on a PIP were consistent with generally accepted human resources practices, subject matter that would not be within the knowledge of the ordinary juror.

In *Bethea v. Merchants Commercial Bank*, No. 11-51, 2014 WL 1924740 (D.V.I. May 14, 2014), the court held that the plaintiff's expert could not opine on whether the reasons given for the plaintiff's termination were pretextual, nor whether the reasons given were well-founded and justifiable or supported by the record. Nor could he state an opinion that simply recapitulated the trial evidence and expressed an opinion based on that evidence and on his judgment of witness credibility. However, he could offer testimony to assist the trier of fact in understanding technical banking terms and processes, and he could "opine on [the plaintiff's] job performance and actions undertaken by the employer vis-à-vis industry standards and based on his personal experience in the banking industry."

In a more recent case, *Emami v. Bolden*, No. 2:15CV34, 2016 WL 8232235 (E.D. Va. Dec. 20, 2016), NASA moved to exclude a plaintiff's expert testimony in an employment discrimination case. The court noted that "[t]he asserted relevance of expert testimony in this employment dispute depends on the technical nature of [the plaintiff's] work." *Id.* at *1. The plaintiff's supervisor asserted that the plaintiff "did not communicate or document his research well and had failed to provide requested updates on his progress," and imposed two additional reporting requirements on the plaintiff's performance plan and appraisal. *Id.* The supervisor asserted that the plaintiff had failed to satisfy the new reporting requirements and placed him on a performance improvement plan with specific reporting requirements. After the plaintiff submitted three reports under the PIP, the supervisor concluded he did not comply with the PIP requirements and proposed removal from federal service, resulting in the plaintiff's termination. The plaintiff argued that the stated reasons for dismissal were pretextual and that he was terminated because of his religion (Islam) and his national origin (Iranian). *Id.* *2. He alleged that an objective review of his reports showed that he complied with all requirements and that his job performance was substantially similar or even superior to that of other engineers working in the department under the same supervisor, and offered two expert witnesses to support his claims. *Id.* One expert had a Ph.D. in physics and over thirty

years of experience conducting research and analyzing scientific data, and the second expert was a NASA contractor who served in a supervisory role similar to the plaintiff's supervisor. The plaintiff offered their expert testimony on whether his work product was consistent with the standards of the scientific community and whether it was substantially similar to that of his comparator employees. The court found that the experts should be allowed to testify on both those subjects. It found this testimony relevant because it "would be helpful in assisting the jury [to] understand how the complex scientific information and narratives in Emami's work complied with the applicable standards of reporting" because the average juror could not comprehend and analyze the adequacy of the scientific reporting. It noted that neither expert was offered "to testify about the subjective quality" of the plaintiff's work and did not allow subjective conclusions such as that the supervisor's expectations were unrealistic or set the plaintiff up to fail.

## Analysis

Brightwell challenges Abbott's testimony on several grounds. He first contends that Abbott "has not shown himself to be qualified to provide expert testimony regarding any of the issues about which he purports to render an opinion." Brightwell contends that Abbott's opinion is not scientific or specialized, and argues that "Abbott's opinions in this case are not based on any scientific data or studies" and he "provides no scientific basis for any of his opinions." Brightwell further contends that Abbott's opinion would not be helpful to the jury. Brightwell argues that the opinions are based on inadequate data and nonexistent methodology, making them unreliable. Last, Brightwell argues that the testimony would be more prejudicial than probative.

The Court must first consider whether Abbott is qualified to offer expert opinion testimony. This requires a preliminary determination of what opinions Abbott intends to give. Plaintiff acknowledges that Abbott's position as Fire Chief is "roughly equivalent" to his supervisor's position at Bandera County, but contends that "it is unclear exactly what field for which Abbott holds himself out as an expert" and that he "has not shown himself to be qualified to provide expert testimony regarding any of the issues about which he purports to render an opinion."

Bandera County's response to the motion to exclude states it intends to offer Abbott as "an expert witness in the field of emergency medicine to testify on the appropriate standards of treatment and medical care required of paramedics to provide crucial lifesaving patient medical care (including

the use of Advanced Life Support ('ALS') protocols), the risks caused by paramedic disengagement from patient medical care, and the standards applicable to documenting patient illness, treatment and medical care." Docket no. 22 at 1. This is somewhat inconsistent with its expert designation, which states that Abbott will testify "regarding Plaintiff's job performance as a paramedic, whether or not he was performing to the level necessary for the position and in compliance with Defendant's procedures and protocols." And Abbott himself states that he was retained "to review the personnel file of Bryan Brightwell, to evaluate Mr. Brightwell's performance as a paramedic, and develop opinions regarding whether his performance met applicable standards of care and whether his performance represented a risk to the patients he treated." Docket no. 22-2 at ¶ 5.

Abbott's report states that he provides his professional opinion based on his training, education, and experience handling personnel matters involving firefighters and paramedics and the application of those disciplines in the public safety industry. He attaches his curriculum vitae detailing his education, certifications, and specialized training, which includes "Fire Department Administrative Investigations and Firefighter Discipline." He states that he has "final authority on all hiring, promotion, suspension, and termination decisions for 110 FTE positions" and applies his knowledge of various laws, including the FMLA. In an affidavit, Abbott states that he has been responsible for supervising Basic Life Support and Advanced Life Support protocols exercised during emergency medical calls, training paramedics and firefighters on patient care and completion of required reports, and managing personnel matters since 2000. He also states that he has "many years of experience assessing the skills and capabilities of paramedics when it comes to patient care." Thus, Abbott contends that he is qualified by virtue of his many years of experience handling and/or supervising personnel issues that specifically relate to paramedics and patient care and notes that he has "reviewed over one hundred personnel files as a Certified Fire Executive ('CFE') and frequently consult[s] with other experts on issues of paramedic disengagement and patient care." The Court finds that Abbott has relevant professional experience in patient care and documentation and evaluating paramedics and that he is qualified to opine on the topics listed above. Thus, the key questions are whether his opinion testimony will assist the jury to understand the evidence or determine a fact in issue and whether it is reliable. In addition, because Abbott offers opinions in his report that go beyond the specific topics listed above, the Court must consider whether those

additional opinions would assist the trier of fact.

The Court thus considers whether the opinions are relevant to an issue in dispute and whether the testimony would assist the jury. Bandera County intends to offer Abbott's testimony as relevant to the issue of whether it terminated Brightwell based on a legitimate, nondiscriminatory basis. Docket no. 22 ¶ 14. Bandera County asserts that "Abbott's opinion supports that Plaintiff's poor and substandard performance placed patients at risk and justifies Bandera County's termination decision." *Id.* Thus, Bandera County argues, Abbott's opinions "will assist the jury in determining whether the decision to terminate Plaintiff was motivated by impermissible considerations or legitimate concerns about performance and patient safety" and "will help the jury to determine whether there were legitimate concerns regarding Plaintiff's ability to provide adequate patient medical care and to properly document that care." *Id.* ¶¶ 15-16. Bandera County asserts, "Abbott's opinions will assist the fact finder to sort through, categorize, and draw factual inferences from the technical and scientific evidence in this case, which – in all likelihood – the average juror will not understand or appreciate." Docket no. 22 at 1-2.

As noted, Defendant asserts that Abbott is an expert "in the field of emergency medicine to testify on the appropriate standards of treatment and medical care required of paramedics to provide crucial lifesaving medical care (including the use of Advanced Life Support ('ALS') protocols), the risks caused by paramedic disengagement from patient medical care, and the standards applicable to documenting patient illness, treatment, and medical care." Docket no. 22 at 1. These would all appear to be appropriate, relevant, and helpful topics for expert testimony, but perhaps realizing that Abbott's report does not appear to address either the first or the third category, Bandera County supplies an additional affidavit in support of its response to the motion.

In his affidavit, Abbott states that he is responsible for supervising basic life support and advanced life support protocols exercised during emergency medical calls, training paramedics and firefighters on patient care and completion of required reports, and managing personnel matters (*i.e.*, reviews and performance improvement plans). Affidavit ¶ 2. He explains that the BLS and ALS are the industry standards of care and that Bandera County has adopted the ALS protocol. *Id.* ¶¶ 2-3. He states that he was hired to evaluate Brightwell's performance as a paramedic and develop opinions regarding whether his performance met applicable standards of care and whether his

performance represented a risk to the patients he treated. *Id.* ¶ 5. He states that he reviewed Brightwell's personnel file, consulted BLS and ALS paramedic policies, other paramedics' response records, other policies and procedures, and BLS and ALS training materials. *Id.* ¶ 9. He states that he "made sure to assess Mr. Brightwell's actions against the standard ALS protocols" and that his role was to review Brightwell's personnel file and Bandera County's policies and procedures, and "evaluate Mr. Brightwell's patient care abilities and possible disengagement issues applying both industry standard BLS and ALS protocols and, finally, his employer's decision to terminate." *Id.* ¶¶ 10, 12. He asserts that his "job was to also determine if the same outcome would occur with a different department or with a different plaintiff: essentially would the same facts produce a consistent outcome." *Id.*

Rather than expressly addressing appropriate standards of treatment and medical care required of paramedics and the standards applicable to documenting patient illness, treatment, and medical care, Abbott's report is primarily a review of Brightwell's job performance. It sets out a review of Brightwell's personnel file and employment records and reaches a conclusion that Brightwell's performance was deficient and that Bandera County's decision to terminate him was appropriate. This is the kind of expert testimony generally disallowed by the courts as invading the province of the jury.

Defendant contends that the testimony should be allowed in this case, however, because of the specialized nature of Brightwell's job as a paramedic and the jury's inability to understand the "technical and scientific evidence" involved. Defendant contends that Abbott applies the "ALS Protocols" and indicates the importance of documentation, and "focuses on the specific examples of the Plaintiff's failure to provide adequate patient care and his failure to improve after receiving notice of his sub-par performance." But it is not clear whether Abbott is applying his expertise and evaluating these materials or simply re-stating their contents. Abbott cites emails that he contends demonstrate patient disengagement, and he cites QA markers and report reviewer comments as demonstrating errors in documentation and questionable patient care. But Abbott does not demonstrate that his expertise is necessary for the jury to evaluate this evidence. He cites to the report reviewer comments such as "failing to document or accurately record cardiac dysrhythmias and associated treatment protocols leading to conflicting information and lack of clarity on the type

of cardiac dysrhythmias being treated," but he does not indicate whether these comments are the actual comments of the reviewers or his interpretation of the records based on an application of industry standards. If the records themselves state or demonstrate that Brightwell failed to accurately document information or provided deficient patient care, Abbott's testimony simply re-stating those records would appear to be superfluous.

Abbott's conclusion that he would have also terminated Brightwell improperly invades the jury's role because it essentially opines that Brightwell's termination was legitimate or justified, which is an issue for the jury to decide. Abbott fails to demonstrate how his expert testimony that Brightwell was afforded reasonable opportunities to improve his delivery of patient care at the ALS level and documentation skills before being terminated is helpful to the jury. The jury can assess whether the steps taken by Bandera County afforded a reasonable opportunity, and nothing in Abbott's report, affidavit, or Bandera County's response demonstrate that expert testimony is needed for this determination due to the nature of paramedic work. In addition, Abbott's review of unrelated personnel counseling incidents and his opinion that the incidents were properly handled is not relevant to the pretext inquiry. Thus, much of Abbott's report includes opinions that are not relevant or not helpful to the jury. In sum, Abbott may not assess, evaluate, or confirm Bandera County's decision to terminate Brightwell, may not testify whether he also would have terminated Brightwell, and may not opine whether the same outcome would occur elsewhere, as these opinions are in essence just recast opinions as to whether Bandera County had a legitimate, non-discriminatory reason for terminating Brightwell. Such opinions invade the province of the jury.

The reasons stated for termination by Plummer were essentially inadequate patient care (assessment, inability to recognize severity and taking appropriate steps) and an inability work independently as a result. Abbott reviews all of Brightwell's pertinent employment files and opines on the areas he finds Brightwell to be deficient as a paramedic (including documentation), going beyond aiding the jury in its evaluation of Bandera County's asserted reasons for termination. Further, while the Court might allow Abbott to opine about industry standards for patient care adopted by Bandera County and applicable to Brightwell, and whether Brightwell's performance objectively satisfied those criteria or presented a risk to patient health and safety, this would be appropriate only if the jury were incapable of making these evaluations without expert testimony.

But, as noted, while Abbott refers to the PIP, emails, and the ePCR records, there is no indication that the jury cannot evaluate these materials themselves to assess Brightwell's job performance or that Abbott must apply his expertise to these materials to explain or interpret them for the jury. While ALS protocols might be beyond the ken of most lay people, it appears from the record that the ePCR QA markers and comments from report reviewers, the PIP, and the emails (such as the March 9, 2016 email from Carlyle to Plummer) document the deficiencies in a way the jury could understand without expert testimony.[2] Unlike the complex scientific reporting involved in *Emami*, it appears that the jury is capable of reviewing Bandera County's asserted reasons for termination without the necessity of expert testimony.

Accordingly, the Court finds that Abbott's proposed testimony is not relevant or helpful to the jury. Plaintiff's motion to exclude Abbott's testimony is GRANTED.

It is so ORDERED.

SIGNED this 13th day of November, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[2] The parties have not provided the Court with the underlying documentation. If the Court's conclusion concerning the need for expert testimony to understand or interpret the underlying documentation is erroneous, Defendant may file a motion for reconsideration explaining how Abbott's expertise is necessary to aid the jury in evaluating the information.